COMMONWEALTH vs. KENNETH P. STATHOPOULOS.

Middlesex.    October 8, 1987. — January 7, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Motor Vehicle,* Operating under the influence, Operating to endanger. *Practice, Criminal,* Instructions to jury.

At the trial of a complaint for operating a motor vehicle while under the influence of intoxicating liquor, there was no reversible error in the judge's twice mentioning, during his instructions to the jury, the defendant's possible ingestion of drugs, where reasonable jurors could not have understood the judge's charge as a whole to negate the necessity of their finding a causal relationship between the defendant's consumption of alcohol and his diminished ability to drive safely. [455-458]

At the trial of a complaint for operating a motor vehicle negligently so that the lives and safety of the public might be endangered, the judge's instructions to the jury created no risk of a miscarriage of justice and adequately informed them of the Commonwealth's burden of proof. [459]

COMPLAINTS received and sworn to in the Somerville Division of the District Court Department on August 28 and September 14, 1984.

On appeal to the jury session of the Cambridge Division, the cases were tried before *Arthur Sherman,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Richard B. Klibaner* for the defendant.

*Emily J. Gould,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. After trial by a jury of six, the defendant, Kenneth P. Stathopoulos, was convicted of operating a motor vehicle while under the influence of intoxicating liquor, G. L. c. 90, § 24 (1) (*a*) (1), and operating a motor vehicle negligently so that the lives and safety of the public might be endangered,

G. L. c. 90, § 24 (2) (*a*). The defendant appealed to the Appeals Court alleging error in the jury instructions. The Appeals Court reversed the conviction for operating under the influence of intoxicating liquor, and affirmed the conviction for operating a motor vehicle negligently so that the lives and safety of the public might be endangered. *Commonwealth* v. *Stathopoulos*, 23 Mass. App. Ct. 286 (1986). The Commonwealth's petition for further appellate review was granted. We affirm both judgments of the District Court.

The Appeals Court accurately summarized the facts as follows. "At approximately 3:20 A.M. on August 28, 1984, a Metropolitan District Commission police officer observed the defendant driving a jeep at a speed of from fifty to sixty miles per hour through two successive red lights on Washington Street in Somerville between Union Square and the Charlestown district of Boston. When stopped by the officer, the defendant resisted arrest. The odor of alcohol was on his breath; he displayed most of the classic symptoms of intoxication; and he fared badly on five separate field sobriety tests, two of them conducted at the scene of the arrest and three of them at the Lower Basin police station. A postarrest search of the defendant yielded five yellow pills which, on later chemical analysis, were determined to contain phencyclidine (PCP), a Class B controlled substance. The defendant attempted without success to recover and swallow the pills, became violent, had to be restrained by leg irons as well as handcuffs, and was taken to Massachusetts General Hospital for several hours of observation."

"At some point the defendant was given a breathalyzer test, which showed a blood alcohol content by weight of .07 percent. G. L. c. 90, § 24 (1) (*e*). The officer who had performed the test expressed the opinions (on cross examination) that the .07 reading was inconsistent with the irrational behavior which the defendant had exhibited in the police station and that the defendant had been under the influence of a combination of alcohol and 'something else.'[1] Such of the pills as had not been

---

[1] The defendant also was charged with operating a motor vehicle while under the influence of narcotic drugs, but was acquitted of this charge at the bench trial in the District Court. The record reveals that at the time of that proceeding, the State chemist's drug analysis certificate was not available.

consumed in the course of the chemical analysis, together with a certificate of the results of the analysis, were admitted in evidence, supposedly for the limited purpose of explaining the defendant's conduct in the police station." *Commonwealth* v. *Stathopoulos, supra* at 287-288.

1. *Instructions on driving while under the influence of intoxicating liquor.* The defendant does not contest the sufficiency of the evidence to support the conviction. He argues only that two of the instructions were erroneous. We turn to the instructions.

In assessing the charge, we are mindful that "the adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth* v. *Sellon*, 380 Mass. 220, 231-232 (1980). "It is the impression created by the charge as a whole that constitutes the test." *Commonwealth* v. *Pinnick*, 354 Mass. 13, 15 (1968). See *Commonwealth* v. *Dyer*, 389 Mass. 677, 683 (1983). There is no dispute that the judge specifically and repeatedly instructed the jurors that to find the defendant guilty of operating under the influence of intoxicating liquor they had to find a causal relationship between the defendant's consumption of alcohol and the defendant's diminished capacity to operate a motor vehicle.[2] See *Commonwealth* v. *Connolly*, 394 Mass. 169, 173 (1985). Such instructions clearly were correct. *Id.*

---

[2] At the outset of the trial, the judge told the jurors that "[a] person is under the influence of intoxicating liquor if at the time of his consumption and as a result of his consumption of alcoholic beverages, his ability to operate a motor vehicle safely has been reduced, diminished."

In the body of the charge, the judge said: "A person is under the influence if at the time of his or her consumption of intoxicating liquor it has diminished his ability to operate a motor vehicle safely. . . . It [operating under the influence] also includes any condition which results from indulging in any degree in intoxicating liquor which has negatively affected the defendant's cleanness of intellect and his self-control and as a result of that has diminished or reduced his capacity to operate safely. . . . [I]f your ingestion of the alcohol in so small or so large an amount diminishes your capacity, reduces your capacity to operate a motor vehicle safely, then you've violated our law, by operating a motor vehicle, of course. A person, ladies and gentlemen, is under the influence of intoxicating liquor when he's affected by it to the extent that his judgment, his alertness, his ability to respond promptly and effectively to unexpected emergencies, is diminished because of the consumption of alcoholic beverages."

The defendant objects to two instructions which mention the ingestion of drugs. The judge told the jurors that, "[i]f you find that the alcohol which the defendant may have ingested alone did not render him under the influence of intoxicating liquor, but the mixture, but the mixture of that alcohol with a drug, a controlled substance, did diminish his capacity to operate safely, you are warranted in finding him guilty of operating under the influence of intoxicating beverages." Later, in the course of explaining the significance of the .07 reading on the breathalyzer, the judge said: "This reading which . . . was introduced . . . shows a .07 . . . . [T]hat's not evidence of the fact that he was under the influence. It is evidence that he ingested alcohol. Whether that alcohol was mixed with something else, so as to then render him under the influence, that is for you to determine, and for you only." The defendant asserts that these two instructions require reversal of his conviction for operating under the influence of intoxicating liquor, because our statute does not provide for conviction for operating under the influence of a mixture of drugs and alcohol.[3] We disagree with the claim that the defendant's conviction must be reversed. We conclude that reasonable jurors could not have understood the judge's charge as a whole to negate the need to find a causal relationship between the defendant's consumption of alcohol and his diminished ability to drive safely. See *Commonwealth* v. *Moreira*, 385 Mass. 792, 796 (1982). Thus, there is no error.[4]

---

[3] The statute provides in relevant part: "Whoever . . . operates a motor vehicle while under the influence of intoxicating liquor, or of marihuana, narcotic drugs, depressants *or* stimulant substances, all as defined in section one of chapter ninety-four C . . . shall be punished . . ." (emphasis supplied). G. L. c. 90, § 24 (1) (*a*) (1) (1986 ed.).

[4] We agree with the observation made in the Appeals Court dissent that "[i]f, given the evidence in the case, the judge had not said something to the effect that a guilty verdict was warranted if a mixture of drugs and alcohol diminished the defendant's capacity, he would have left the jurors in a state of confusion." 23 Mass. App. Ct. at 293 (Fine, J., dissenting).

We note, however, that an appropriate instruction in these circumstances might be similar to the following: You are instructed that, if the defendant's ability to operate safely was diminished by alcohol, the defendant has violated the statute even though some other cause, also operating on the

A defendant may be found guilty of driving while under the influence of intoxicating liquor if the defendant's ability to operate a vehicle safely is diminished, and alcohol is one contributing cause of the diminished ability. See *Commonwealth v. Connolly, supra* at 173. It is not necessary that alcohol be the sole or exclusive cause. It is enough if the defendant's capacity to operate a motor vehicle is diminished because of alcohol, even though other, concurrent causes contribute to that diminished capacity. Case law in other jurisdictions supports this conclusion. See, e.g., *State v. Thomas*, 79 Idaho 372, 376 (1957); *State v. West*, 416 A.2d 5, 9 (Me. 1980); *State v. Blier*, 330 A.2d 122 (Me. 1974);[5] *Commonwealth v. Rex*, 168 Pa. Super. 628, 631-632 (1951); *Heard v. State*, 665 S.W.2d 488 (Tex. Crim. App. 1984) (en banc); *Harrell v. Norfolk*, 180 Va. 27, 34-35 (1942). See also *State v. Daniels*, 379 N.W.2d 97 (Minn. App. 1986); *State v. Glynn*, 20 N.J. Super. 20 (1952). "When the defendant is charged with operating while under the influence of intoxicating liquor, it is immaterial whether the driver is under the influence of intoxicating liquor and other substances. . . . [In] order to find guilt, the jury need only to find that the liquor contributed to the defendant's impairment." (Citations omitted.) *State v. West*, 416 A.2d 5, 9 (Me. 1980).

We reject the Appeals Court's conclusion that "the only instruction which may properly be given a jury in a case such as the present is one to the effect that, although they may find that the defendant had ingested a narcotic or other proscribed substance which may have rendered him more susceptible to the intoxicating effect of liquor, *they cannot convict unless*

---

defendant while he or she was driving, tended to magnify the effect of the liquor or concurred in causing the defendant's diminished capacity to operate safely. It is no defense, under the statute, to show the existence of such concurring cause, so long as the influence of the liquor remained as one of the causes of the defendant's diminished capacity. See 3 R.E. Erwin, Defense of Drunk Driving Cases § 40.05 (3d ed. 1985).

[5] Subsequent to the two Maine cases cited here, the Maine Legislature · in 1981 enacted a combined influence statute. See Me. Rev. Stat. Ann. tit. 29, § 1312-B(1)(A).

*they also find beyond a reasonable doubt that the liquor was the efficient cause of the intoxication and that such intoxication resulted in diminishing the defendant's ability or capacity to operate a motor vehicle safely*" (emphasis added). *Commonwealth* v. *Stathopoulos, supra* at 290. Our statute imposes no such requirement. What is required is that the Commonwealth prove that liquor diminished the defendant's capacity to operate a motor vehicle safely.[6]

We also think that the concept of "efficient cause" is not helpful in cases where a defendant is charged with operating under the influence of intoxicating liquor. "Efficient cause" has been defined by this court as the "cause that necessarily sets in operation the factors which caused" the prohibited result, *Commonwealth* v. *Rhoades*, 379 Mass. 810, 825 (1980). In criminal cases, there may be more than one efficient or proximate cause of the prohibited result. *Commonwealth* v. *Fernette*, 398 Mass. 658, 668 (1986). *Commonwealth* v. *McLeod*, 394 Mass. 727, 745 n.21, cert. denied sub nom. *Aiello* v. *Massachusetts*, 474 U.S. 919 (1985). *Commonwealth* v. *Rhoades, supra* at 823 n.12. *Commonwealth* v. *Hackett*, 2 Allen 136, 142 (1861).

Further, the Appeals Court's opinion may be read to require the Commonwealth to prove "intoxication" in a prosecution for driving under the influence of intoxicating liquor. We reject any such requirement. In *Connolly*, we held that "the Commonwealth must prove beyond a reasonable doubt that the defendant's consumption of alcohol diminished the defendant's ability to operate a motor vehicle safely" (emphasis deleted). *Commonwealth* v. *Connolly, supra* at 173. The Commonwealth is not required to prove that the defendant was drunk. *Id.* at 172. *Commonwealth* v. *Bernier*, 366 Mass. 717, 720 (1975). *Commonwealth* v. *Lyseth*, 250 Mass. 555, 558 (1925). An instruction referring to "intoxication" as the cause of a diminished ability to drive may confuse jurors on the issue whether they must find the defendant was "drunk." Such an instruction therefore should not be given.

---

[6] An appropriate instruction in these circumstances is suggested in note 4, *supra*.

2. *Driving negligently so that the lives and safety of the public might be endangered.* The defendant argues that the judge's instructions on the complaint for negligent driving created a substantial risk of a miscarriage of justice.[7] *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). The defendant did not seek further appellate review on the issue of these instructions. The issue is before us, however, because our order granting the Commonwealth's application for further appellate review contained no limitation, and both parties argued the issue in their briefs. *Ballantine* v. *Falmouth,* 363 Mass. 760, 762 n.2 (1973). After reviewing the record, we agree with the Appeals Court's conclusion that the judge's instructions were not erroneous and did not create a risk of a miscarriage of justice. See 23 Mass. App. Ct. at 291, 292. We also agree with the Appeals Court that the judge adequately instructed the jury on the Commonwealth's burden of proof. See *id.* at 292.

*Judgments affirmed.*

---

[7] The defendant did not object to these instructions at trial. On appeal, the defendant claims a risk of a miscarriage of justice was created because the instructions allegedly (1) permitted the jury to find the defendant guilty if his driving endangered only himself; and (2) did not state expressly that the Commonwealth's burden of proof, which the judge explained in general terms, applied to each element of the offense.